WILLIAM SCULLY

v.

GEORGE HAMILTON.

</div>

1. REASONABLE TIME.—Where no time is mentioned in a contract for the performance of its conditions and it can not be gathered from the language employed what was the intention in this respect, the law will imply a reasonable time, and what is a reasonable time will depend upon the peculiar circumstances of the case.

2. CONSTRUCTION OF CONTRACT.—Where a contract for the sale of a tract of land contained the provision that if the parties saw fit to survey the

land for the purpose of ascertaining the amount of acres contained therein, which by preceding clauses had been provisionally determined, and if such survey should show more acres than shown by the government survey, the vendee should pay the difference, and if less the amount should be deducted from the purchase money, and the land was sold and the money paid, and seven years after, a survey was made by the vendors and an excess of land over the amount shown by the government survey was found and this action was brought for the additional payment. *Held*, that upon a construction of the contract and the undisputed facts in the case no right of action exists.

APPEAL from the Circuit Court of Sangamon county; the Hon. J. J. PHILLIPS, Judge, presiding. Opinion filed February 25, 1886.

Messrs. BLINN & HOBLIT, for appellant; that it is a cardinal principle in construing contracts that they must have a reasonable interpretation according to the intention of the parties executing them, if the intention can be gathered from the language used, cited Wilson v. Marlow, 66 Ill. 385; Nichols v. Mercer, 44 Ill. 250; Tracey v. Chicago, 24 Ill. 500; Walker v. Douglas, 70 Ill. 448; 1st Chitty on Contracts (4 Am. edition), 104–5; Broadwell v. Broadwell, 1 Gilman, 612.

In giving construction to a contract the question is, what, by a fair and reasonable interpretation of the words and acts of the parties, was the bargain between them: Nichols v. Mercer, 44 Ill. 250; Fitch v. Priest, 46 Ill. 441; Hartford Fire Ins. Co. v. Olcott, 97 Ill. 440.

Where no time is mentioned in an agreement for the performance of any of its conditions, a reasonable time is to be understood. What is a reasonable time depends upon the circumstances of each case: Chitty on Contracts, part 3, 730; Cacker v. Franklin Hemp & Flax Mfg. Co., 3 Sumner, 530; Atwood v. Cobb, 16 Pickering, 251; Roberts v. Beatty, 2 Penn. 63; Phillips v. Morrison, 3 Bibb, 105; Sawyer v. Hammond, 3 Shipley, 40; Howe v. Huntington, 3 Shipley, 350; Atkinson v. Brown, 20 Me. 67; Nudd v. Wills, 11 Wis. 436; Waterman v. Dutton, 6 Wis. 264; Driver v. Ford, 90 Ill. 598.

Messrs. STUART, EDWARDS & BROWN, for appellee; as to reasonable time, cited 2 Parsons on Contracts, 5th Ed. 661.

WALL, P. J.   James C. and George Hamilton, being the owners of a large body of land in Sangamon county, entered into a written agreement for the sale thereof to William Scully.   The contract bore date of April 17, 1877, and was executed in the names of the respective parties, those of the vendors being signed by the said George Hamilton and that of the vendee by Koehnle & Scully, his agents.   It recites that the Hamiltons agreed to sell to Scully and he agreed to buy at the rate of $50 per acre and ten thousand dollars in addition, certain lands described, containing in the aggregate 3,807.42 acres according to the government survey, and at the rate of $45 per acre certain other lands described, containing, according to government survey, 353.92 acres, deducting 20 acres estimated to be occupied by the T. W. & W. R. R. The sum of $15,000 was paid in cash on the execution of the agreement, when possession was given to the purchaser. $85,000 was to be paid on the execution of a warranty deed by the vendors on the 10th of May following, with six per cent. interest, and the balance of the purchase money, amounting to $115,297.40, was to be paid on or before March 1, 1878, with interest, etc.   The deed was to be delivered at the First Nat. Bank, Springfield, where the purchase money was to be paid.   The purchaser was to execute his note and mortgage for the balance with certain conditions not necessary to mention, and the vendors were to procure by June 1, 1877, a proper release of a certain deed of trust held by Parsons & Scudder for the benefit of a bank in St. Louis.   Then occurs the following provision.

" And the said Messrs. James C. and George Hamilton, or William Scully, agree at their own expense, respectively, to survey the said land, if they see fit, for the purpose of ascertaining the amount of acres contained therein; said survey to be made by the county surveyor or some other competent surveyor ; and it is hereby agreed that if on actual survey the said land shall be shown to contain more acres than is shown by the government survey, the said William Scully shall pay the difference ; and if, upon such survey, the said land shall be shown to contain a less amount of acres than is shown by the

government survey, the amount thereof shall be deducted from said purchase money, and the said William Scully allowed a credit of said amount of his said note and mortgage."

It was further provided that the vendors should, at their own expense, execute a general warranty deed, and also furnish to the vendee a certain contract referred to, executed in 1845, by persons named; also a copy of a certain decree rendered in Kentucky in 1859, and certain proofs as to the title, which proofs were to be so furnished by said May 10th, failure in which was to work a cancellation of the contract. Then followed a stipulation in regard to taxes, and a reservation as to crops, etc. The terms of this contract were carried out as to the execution of the papers, the delivery of proofs, possession of the land and payment of the purchase money, all of which was done to the satisfaction of the parties interested, by the first of April, 1878. The present controversy grows out of a demand on the part of the vendors for an additional paymen; for an excess of land over the amount shown by the government survey, resting upon surveys made at the instance of vendors under the provision of the contract above set forth.

In January or February, 1885, the vendee, Scully, was notified that a survey, so made at the instance of the vendors, showed an excess of some 68 acres (as appears from the evidence) for which compensation was demanded, upon refusal to pay which the present suit was brought. The case was tried by the court, a jury being waived, and the issues were found for the plaintiff, and judgment was rendered accordingly for $3,505.54, from which an appeal is prosecuted to this court. There is no conflict in the testimony, and the point for decision is as to the proper construction of the contract. The survey made by the vendors was not completed till January, 1884, though it appears something was done in the matter in 1881 and 1883, but notice was not given the vendee, as already stated, till 1885. It is stipulated that the survey could be conveniently made in two weeks. It will be observed that in the provision already quoted no time is expressly fixed when the survey shall be made, and the solution of the question presented by this omission must determine the rights of the par-

ties. Nearly seven years elapsed after full performance of the contract had been completed by the payment of the balance of the purchase money, before this proceeding was instituted or notice given of the demand; and it seems to be the view of counsel for plaintiff that nothing short of the period of ten years, fixed by the Statute of Limitations in regard to actions on written contracts, would bar this suit. That limitation does not begin to run until the cause of action accrues. The cause of action would not accrue, manifestly, in this case, until a survey had determined the real number of acres, and perhaps not until notice had been given. So that according to the view suggested the survey might be delayed indefinitely and the Statute of Limitations would afford no aid in solving the difficulty. Other considerations must be invoked.

In construing contracts it is a settled rule and a guiding principle that the various provisions shall have a fair and reasonable interpretation according to the intention of the parties, and the question is what, according to such interpretation, was the bargain. It is competent to consider this in the light of surrounding circumstances, so that the court may, as far as possible, occupy the standpoint of the parties when the contract was entered into. When no time is mentioned in a contract for the performance of its conditions, and it can not be gathered from the language employed what was the intention in this respect, the law will imply a reasonable time; and what is a reasonable time will depend upon the peculiar circumstances of the case. The contract in this case involves an important transaction and was evidently drawn with care. Its provisions are reasonable and fair and seem to have been readily understood and promptly performed aside from the clause under consideration. It was executed on the 17th of April, 1877, and was to be fully carried out by the 1st of March, 1878. The clause referred to is found in the body of the writing immediately following the provision in regard to the final payment and the release of an existing incumbrance. The substance of it is that the respective parties reserved the right, if they saw fit, to survey the land for the purpose of ascertaining the amount of acres therein contained,

Scully v. Hamilton.

which, by preceding clauses, had been provisionally determined; and if such survey should show more acres than are shown by the government survey the vendee should pay the difference, and if it should show less acres the amount thereof should be deducted from the purchase money, and the vendee should be allowed a credit therefor on his note and mortgage. So far as the vendee is concerned it seems to be perfectly clear that if he wished to avail himself of the right thus conferred, it would be necessary to act in time to obtain the credit on his note. He could have a deduction from the purchase money, but it was not provided nor intended that after the purchase money was all paid, and the note and mortgage thereby fully discharged, he could make the survey and then recover back a part of the money. The language employed would certainly preclude such a demand by the vendee. The time when a thing is to be done, or within which a right may arise, is generally deemed essential, and where parties make it so the provision will be enforced, as a rule, in courts of law. It is usually important to a man that he shall know when the time has passed within which another may exercise a contract right at his expense, and he may properly stipulate in this respect. When he does not so stipulate, and even when he is in default for the non-performance of his obligation, statutes of limitation operating upon grounds of public policy interpose and fix a limit within which relief must be sought in the courts. Assuming, as we think properly, that the vendee was required to make his claim within the time fixed for the performance of the contract, what limitations, if any, may be imposed upon the vendor? The principle of mutuality is of general if not of universal application. Its equity commands consent, and courts will reluctantly adopt a construction placing parties on an unequal footing in respect to the same right, giving to one a privilege not enjoyed by the other. It will not readily be presumed that such was the understanding. Looking at the contract as an entirety, reading all its provisions together in view of the subject-matter and the situation in general, we can not suppose it was intended that there should be any want of mutuality in regard to the point involved in this clause.

We think it was intended that if before final payment was made it should appear that the number of acres was more or less than indicated by the government survey, which in absence of proof to the contrary, is usually deemed conclusive, the error might be corrected, and that the aggregate price to be paid might thereby be increased or diminished, but that either party, in order to avail himself of the clause, should take the necessary steps before the completion of the contract by final payment. If this view is not adopted then it must be held that the rule of a reasonable time or the Statute of Limitations must be applied. If a reasonable time is to be considered then we should say without hesitation that the delay for nearly seven years is fatal. If the Statute of Limitations ten years is to be applied, then the trouble heretofore suggested will arise, that is, the statute began to run only from the time the cause of action accrues, which in this case can not be until a survey has been made, and this would render possible a delay never contemplated. Loring v. City of Boston, 7 Metc. 409. We are of opinion that upon a proper construction of the contract and the undisputed facts in the case the plaintiff below disclosed no right of action and the judgment of the circuit court is therefore reversed.

<div style="text-align: right">Reversed.</div>